Nathan Mathes, Defendant in Error, v. A. L. Stewart et al., Plaintiffs in Error.

Opinion filed July 16, 1928.

F. A. REISNER, for plaintiffs in error.

HARRY FAULKNER, for defendant in error.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Mr. A. L. Stewart entered into a written contract to build an addition to the store of defendant in error, and to do some other work in connection therewith. The contract price was $3,425 and the contractor gave defendant in error a bond in that sum executed by

Williams-Barr Lumber Company, as surety. Neither the contract nor the bond made any provision for any additional work or extras. After the execution of the contract, and during the time Mr. Stewart was engaged in its performance, certain changes and extra allowances on account thereof were agreed to by Mr. Stewart and were reduced to writing and signed by him. The amount thereof was $270.50. Some other work, not mentioned in the contract, was done but there was no written agreement with reference thereto.

Mr. Stewart did not complete his contract. He contends that defendant in error was to blame for his failure to complete it, while defendant in error insists that it became necessary for him to take the matter out of the hands of Mr. Stewart in order to protect himself against mechanics' liens.

The undisputed evidence shows that defendant in error paid to Mr. Stewart by checks offered in evidence the sum of $2,584; that in addition thereto he paid bills for labor and material furnished under the terms of the contract in the sum of $1,989.95, the total amount paid by defendant in error being $4,573.95. The contract price was $3,425. The total amount paid by defendant in error was $1,148.95 more than the contract price.

Defendant in error brought this suit upon the bond against Mr. Stewart and the surety and the trial resulted in a verdict and judgment for $687.25. The surety on the bond was engaged in the lumber business and furnished the lumber for the improvement and defendant in error paid that bill amounting to $900. He testified that the other bills paid by him were approved by Mr. Stewart. He also testified that he paid for extras and additional work which Mr. Stewart agreed in writing he should do.

The main contention seems to be that additional work and extras were contracted for without the knowledge or consent of the surety on the bond and

that by reason thereof the surety was discharged by operation of law. In the case of voluntary sureties for accommodation, the surety is discharged if there is any change made in the contract without his consent, whether he is actually damnified or not; but surety companies doing a surety business for profit cannot be relieved from their obligations except where it is shown there was a material departure from the contract which had resulted in some injury to the surety. *Gunsul v. American Surety Co. of New York,* 308 Ill. 312; *City of Chicago v. Agnew,* 264 Ill. 288.

In the case at bar the surety is not a surety company doing a surety business for profit. Neither can it be said to be an accommodation surety. It is quite apparent that the Williams-Barr Lumber Company signed the bond as surety in consideration that Mr. Stewart would purchase from it the lumber necessary to carry out the contract. It seems to us that the rule applicable to surety companies as above stated should apply to a case of this kind where the surety executed the bond for a consideration.

In the case at bar defendant in error shows that he paid out $1,148.95 more than the contract price. The jury allowed him but $687.25. It was a controverted question of fact as to whether he paid for the extras which were contracted for in writing by Mr. Stewart, in addition to the amount hereinabove stated. Mr. Stewart testified that defendant in error required him to provide a watchman while the work was being done and that this cost him $93. According to the abstract he also testified that at the request of defendant in error he placed shelving in the store room at a cost of from $300 to $400. There was nothing in the contract that required him to pay a watchman or to put in that shelving and defendant in error did not testify as to those matters. It looks as if the jury had allowed plaintiffs in error credit for those two items or at least for the greater portion of them. We fail to see where-

in the ordering of the extras and the additional work resulted in injury to the surety.

Mr. Stewart was required by the terms of the contract to move a balcony to the rear of the new room. He says that he was to use the same lumber but that after he had taken the balcony down the lumber disappeared and he had to order other lumber at a cost of $300. He does not claim that defendant in error was in any way to blame for the disappearance of the lumber. Mr. Stewart was responsible for the lumber and if he allowed it to disappear he is in no position to claim that defendant in error should reimburse him therefor. He claims some of the other extra work and material furnished cost him more than the amount he agreed that defendant in error should pay for such changes. Having agreed to make the changes for a certain amount we are of the opinion that he cannot make such contention.

It is argued that the court erred in modifying certain instructions requested by plaintiffs in error. If the court modified any of such instructions the same is not shown in the abstract or the transcript of the record. So far as it appears the instructions given on behalf of plaintiffs in error were given in the language in which they were asked by them. It is also suggested that their refused instructions should have been given. Counsel simply make a statement without attempting to show why they should have been given.

From a careful consideration of all of the evidence, the law applicable thereto and the rulings of the court, we are of the opinion that no reversible error has been shown and for that reason the judgment is affirmed.

*Affirmed.*